O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

THOMAS ROCK,                          )   NO. EDCV 12-00382-MAN
                                      )
            Plaintiff,                )
                                      )   MEMORANDUM OPINION
        v.                            )
                                      )   AND ORDER
CAROLYN W. COLVIN,[1]                 )
Acting Commissioner of Social         )
Security,                             )
                                      )
            Defendant.                )
_____)

        Plaintiff filed a Complaint on March 23, 2012, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of
plaintiff's application for supplemental security income benefits
("SSI").  On April 13, 2012, the parties consented to proceed before the
undersigned United States Magistrate Judge pursuant to 28 U.S.C.
§ 636(c).  The parties filed a Joint Stipulation on December 21, 2012,
in which:  plaintiff seeks an order reversing the Commissioner's
decision and remanding for further administrative proceedings or,

_____

        [1]   Carolyn W. Colvin became the Acting Commissioner of the Social
Security Administration on February 14, 2013, and is substituted in
place of former Commissioner Michael J. Astrue as the defendant in this
action.  (*See* Fed. R. Civ. P. 25(d).)

alternatively, for the payment of benefits; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings.  The Court has taken the parties' Joint Stipulation under submission without oral argument

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On November 27, 2007, plaintiff filed an application for SSI. (Administrative Record ("A.R.") 9.)  Plaintiff, who was born on January 16, 1960,[2] claims to have been disabled since May 1, 1993 (*id.*), due to: a mental disorder; asthma; carpal tunnel syndrome; and a right shoulder injury (A.R. 48).  Plaintiff has past relevant work experience as a construction worker.[3]  (A.R. 14.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 9, 48-52, 55-59), plaintiff requested a hearing (A.R. 9, 61-63).  On August 18, 2009, plaintiff, who was represented by an attorney, appeared and testified at a hearing before Administrative Law Judge Jay E. Levine (the "ALJ").  (A.R. 9, 19-45.)  Vocational expert Sandra M. Fioretti also testified.  (*Id.*)  On March 25, 2010, the ALJ denied plaintiff's claim (A.R. 9-15), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-4).  That decision is now at issue in this action.

---

[2]   On the date the application was filed, plaintiff was 47 years old, which is defined as a younger individual.  (A.R. 14; citing 20 C.F.R. § 416.963.)

[3]   In so finding, the ALJ noted that plaintiff's past relevant work as a construction worker was "nearly too old to be considered."  (A.R. 14.)

1                     **SUMMARY OF ADMINISTRATIVE DECISION**

2

3       The ALJ found that plaintiff has not engaged in substantial gainful

4  activity since November 27, 2007, the application date.  (A.R. 11.)  The

5  ALJ determined that plaintiff has the severe impairments of "chronic

6  dislocated right shoulder and mood disorder."  (*Id.*)  The ALJ concluded,

7  however, that plaintiff does not have an impairment or combination of

8  impairments that meets or medically equals one of the listed impairments

9  in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d),

10 416.925, and 416.926).  (*Id.*)

11

12      After reviewing the record, the ALJ determined that plaintiff has

13 the residual functional capacity ("RFC") to perform less than the full

14 range of light work as defined in 20 C.F.R. § 416.967(b).  (A.R. 12.)

15 Specifically, the ALJ found that:

16

17      [plaintiff] can lift and/or carry 20 pounds occasionally and

18      10 pounds frequently; stand and/or walk 6 hours in an 8-hour

19      workday; no pushing/pulling with the left upper extremity; no

20      work above shoulder level with right upper extremity and no

21      power gripping with the right hand.  [Plaintiff] can do no

22      climbing or crawling but he can occasionally balance, stoop,

23      kneel, and crouch.  He cannot work at heights or around

24      dangerous machinery.  He cannot perform work where there are

25      production quotas such as on a conveyor belt or piece

26      work.  He should work with things rather than with people.  He

27      should perform work which requires little contact with members

28      of the public or which does not involve intense interactions

3

1        with coworkers or supervisors.

2

3    (*Id.*)

4

5        Based  upon  his  RFC  assessment  for  plaintiff  and  after  having

6    considered  plaintiff's  age,  education,[4]  work  experience,  and  the

7    testimony of the vocational expert, the ALJ found "there are jobs that

8    exist  in  significant  numbers  in  the  national  economy  that  [plaintiff]

9    can perform."  (A.R. 14.)   In so finding, the ALJ specifically noted

10   that, because plaintiff's ability to perform the full range of light

11   work is impeded by additional limitations, the testimony of a vocational

12   expert  was  necessary  to  determine  the  extent  to  which  plaintiff's

13   limitations eroded the occupational base for this level of work. (A.R.

14   14-15.)   After eroding the job numbers by 75% based on plaintiff's RFC

15   limitations,  the  vocational  expert  testified  that  plaintiff  would  be

16   able to perform the job of "small products assembly I." (A.R. 15.)  The

17   vocational  expert  further  testified  that  plaintiff  would  be  able  to

18   perform  the  jobs  of  optical  assembly  and  assembler  of  buttons  and

19   notions notwithstanding his RFC limitations.  (*Id.*)  Pursuant to SSR 00-

20   04p,  the  ALJ  confirmed  that  the  vocational  expert's  testimony  was

21   consistent  with  the  Dictionary  of  Occupational  Titles  ("DOT").[5]

22   Accordingly,  the  ALJ  concluded  that  plaintiff  has  not  been  under  a

23

24

25       [4]    The  ALJ  found  that  plaintiff  has  at  least  a  high  school
     education  and  is  able  to  communicate  in  English.   (A.R.  14.)

26       [5]    The DOT may be relied upon "in evaluating whether the claimant
     is able to perform work in the national economy."  Terry v. Sullivan,
27   903 F.2d 1273, 1276 (9th Cir. 1990).   The DOT classifies jobs by their
     exertional  and  skill  requirements  and  may  be  a  primary  source  of
28   information for the ALJ.  20 C.F.R. § 416.966(d)(1).

1  disability, as defined in the Social Security Act, since November 27,
2  2007, the application date.  (*Id.*)

3

4                          **STANDARD OF REVIEW**

5

6       Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's
7  decision to determine whether it is free from legal error and supported
8  by substantial evidence in the record as a whole.  Orn v. Astrue, 495
9  F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant
10 evidence as a reasonable mind might accept as adequate to support a
11 conclusion.'"  *Id.* (citation omitted).  The "evidence must be more than
12 a mere scintilla but not necessarily a preponderance." Connett v.
13 Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the
14 record can constitute substantial evidence, only those 'reasonably drawn
15 from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063,
16 1066 (9th Cir. 2006)(citation omitted).

17

18      Although this Court cannot substitute its discretion for that of
19 the Commissioner, the Court nonetheless must review the record as a
20 whole, "weighing both the evidence that supports and the evidence that
21 detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of
22 Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also*
23 Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is
24 responsible for determining credibility, resolving conflicts in medical
25 testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d
26 1035, 1039 (9th Cir. 1995).

27

28      The Court will uphold the Commissioner's decision when the evidence

                                    5

is susceptible to more than one rational interpretation. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins</u>, 466 F.3d 880, 885 (9th Cir. 2006)(quoting <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims the ALJ erred at step five of the sequential evaluation in finding that plaintiff could perform the jobs of small products assembly I, optical assembly, and assembler of buttons and notions, because, contrary to the vocational expert's testimony, the DOT's description for these jobs is inconsistent with plaintiff's RFC. (Joint Stip. at 3-9.)

At step five, the burden shifts from the claimant to the ALJ to prove that, based on the claimant's RFC, age, education, and past work experience, the claimant is able to perform work that exists in significant numbers in the national economy. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1291 (9th Cir. 1996); 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c). The ALJ can meet his burden at step five by either taking the testimony of a vocational expert or by referring to the Grids. *See* <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1100-01 (9th Cir. 1999)(describing how the

vocational expert's testimony and the Grids are used at step five).  If the ALJ chooses to rely upon the testimony of a vocational expert, as he did in this case, the hypothetical posed to the vocational expert must be "accurate, detailed, and supported by the medical record."  *Id.* at 1101.  If the hypothetical presented to the vocational expert does not reflect all the claimant's limitations and/or is not supported by evidence in the record, the "[vocational] expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993)(citation and internal quotations omitted).

The ALJ has an affirmative responsibility to ask whether a conflict exists between the testimony of a vocational expert and the DOT.  SSR 00-04p, 2000 SSR LEXIS 8, at *9; Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007).  If there is a conflict between the DOT and testimony from the vocational expert, an ALJ may accept testimony from the vocational expert that contradicts the DOT, but "the record must contain 'persuasive evidence to support the deviation.'"  Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001)(quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)).  The ALJ must resolve any conflict by determining whether the vocational expert's explanation is reasonable and provides sufficient support to justify deviating from the DOT.  SSR 00-04p, 2000 SSR LEXIS 8, at *9; Massachi, 486 F.3d at 1153.  An ALJ's failure to do so, however, can be harmless error when there is no conflict or the vocational expert provides a basis for relying on his or her testimony rather than on the DOT.  *Id.* at 1154 n.19.

At the August 18, 2009 administrative hearing, the ALJ asked the

7

vocational expert whether a hypothetical individual who was limited as is plaintiff -- *i.e.*, limited to:  lifting or carrying 10 pounds occasionally, less than 10 pounds frequently; standing or walking six hours out of an eight hour day; no pushing or pulling with the left upper extremity; no work on unprotected heights or dangerous machinery; no climbing or crawling; occasional balancing, stooping, kneeling, and crouching; no overhead lifting with the non-dominant upper extremity; no power gripping with the non-dominant hand; no conveyor belt or piece work; and working with things rather than with people -- could perform work in the regional or national economy.  (A.R. 42.)  The vocational expert testified that such an individual could perform the job of small products assembler I, after a 75% erosion, as well as the jobs of optical assembly and assembler in buttons and notions.  (A.R. 43.)  When asked by the ALJ if her testimony was "consistent with the DOT," the vocational expert answered, "Yes."  (*Id.*)

The ALJ relied on the vocational expert's testimony in finding that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform."  (A.R. 14.)  In so finding, the ALJ noted that "[plaintiff]'s ability to perform all or substantially all of the requirements of [the full range of light work] has been impeded by additional limitations."  (*Id.*)  Accordingly, "[t]o determine the extent to which these limitations erode the unskilled light occupational base, [the ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with [plaintiff]'s age, education, work experience, and [RFC]."  (A.R. 15.)  The ALJ noted that, after considering the above factors, the vocational expert testified that such an individual would be able to perform other work, including

1    the positions of products assembler I, optical assembly, and assembler

2    of buttons and notions.  (*Id.*)

4         The ALJ did not err in relying on the vocational expert's testimony

5    that plaintiff could perform other work in the national economy.  As an

6    initial matter, the ALJ complied with his affirmative duty to confirm

7    that the vocational expert's testimony was consistent with the

8    information provided in the DOT.  SSR 00-04p, 2000 SSR LEXIS 8, at *8-9

9    ("When a [vocational expert] provides evidence about the requirements of

10   a job or occupation, the [ALJ] has an affirmative responsibility to ask

11   about any possible conflict between that [vocational expert's] evidence

12   and information provided in the DOT.  In these situations, the [ALJ]

13   will:  Ask the [vocational expert] if the evidence he or she has

14   provided conflicts with information provided in the DOT").

15   Specifically, after the vocational expert testified that a hypothetical

16   individual with plaintiff's limitations could perform the above-noted

17   jobs, the ALJ asked the vocational expert whether her testimony was

18   consistent with the DOT.  The vocational expert replied, "Yes."

20        Further, contrary to plaintiff's claim, there does not appear to be

21   an inconsistency between the vocational expert's testimony and the DOT

22   with respect to plaintiff's RFC limitations to:  (1) no power gripping

23   with the right hand; (2) no work involving dangerous machinery; and (3)

24   no work involving production quotas such as on a conveyor belt or piece

25   work.  First, nothing in the DOT indicates that the jobs of small

products assembler I,[6] optical assembly,[7] and assembler in buttons and notions[8] require "power gripping."  Further, even if there were such a requirement, nothing precludes plaintiff from power gripping with his dominant, left hand.  Second, the DOT does not specifically indicate the use of any "dangerous machinery" for the above-noted jobs.  To the extent that the job of small products assembler I involves the use of machinery that is considered "dangerous," the vocational expert eroded the numbers of that job by 75% based on plaintiff's RFC limitations, including his limitation from working with dangerous machinery.[9]  Lastly,

---

[6]    As set forth in the DOT, a small products assembler I:

[p]erforms any combination of the following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors:  Positions parts in specified relationship to each other, using hands, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools. Frequently works at bench as members of assembly group assembling one or two specific parts and passing unit to another worker.  Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line.  May be assigned to different work stations as production needs require or shift from one station to another to reduce fatigue factor.  May be known according to product assembled.

DOT 706.684-022 (small products assembler I).

[7]    As set forth in the DOT, an optical assembler "[a]ttaches nose pads and temple pieces to optical frames, using handtools: Positions parts in fixture to align screw holes.  Inserts and tightens screws, using screwdriver."  DOT 713.687-018 (optical goods assembler).

[8]    As set forth in the DOT, an assembler in buttons and notions "[i]nserts paper label in back of celluloid or metal advertising buttons and forces shaped stickpin under rim."  DOT 734.687-018.

[9]    Although the vocational expert did not specifically state that the 75 percent erosion in the occupational base was due to plaintiff's various limitations, such a conclusion is reasonably inferred.  *See*

10

1   nothing in the DOT specifically indicates that any of these jobs involve

2   production quotas.    However, to the extent there *may* be production

3   quotas used in the job of small products assembler I, the vocational

4   expert, as noted *supra*, eroded that occupational base by 75% to account

5   for plaintiff's limitations, including that of no work involving

6   production quotas.    Accordingly, because there does not appear to be a

7   clear inconsistency between the DOT and the vocational expert's

8   testimony, the ALJ committed no reversible error in relying upon the

9   vocational expert's testimony regarding plaintiff's ability to perform

10  other work notwithstanding his limitations.

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  

27  Light v. SSA, 119 F.3d 789, 793 (9th Cir. 1997)(noting that inferences
    may be drawn from the context of the expert's testimony); *see also*

28  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982)(noting that the
    ALJ is entitled to draw inferences logically flowing from the evidence).

1

**CONCLUSION**

2

3          For the foregoing reasons, the Court finds that the Commissioner's

4    decision is supported by substantial evidence and is free from material

5    legal error.  Neither reversal of the Commissioner's decision nor remand

6    is warranted.

7

8          Accordingly, IT IS ORDERED that Judgment shall be entered affirming

9    the decision of the Commissioner of the Social Security Administration.

10   IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of

11   this  Memorandum  Opinion  and  Order  and  the  Judgment  on  counsel  for

12   plaintiff and for defendant.

13

14         **LET JUDGMENT BE ENTERED ACCORDINGLY.**

15

16   DATED:   July 1, 2013

17                                        _____
                                                MARGARET A. NAGLE
18                                        UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28

12